UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NATHANIEL GREEN,

                             Plaintiff,

                                                                     9:10-CV-00121

v.

                                                                     (DNH/TWD)

MR. LAWRENCE SEARS, et al.

                             Defendants.
_____

APPEARANCES:                                     OF COUNSEL:

NATHANIEL GREEN
Plaintiff *pro se*
1365 St. Nicholas Avenue
Apt. 25K
New York, New York 10033

HON. ERIC T. SCHNEIDERMAN              C. HARRIS DAGUE, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Counsel for the Remaining Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

### I.    INTRODUCTION

*Pro se* Plaintiff Nathaniel Green has commenced this 42 U.S.C. § 1983 action alleging the deprivation of his civil rights while he was confined in the Ogdensburg Correctional Facility ("Ogdensburg"). (*See generally* Dkt. No. 18.) In his Second Amended Complaint, Plaintiff claimed, *inter alia*, that requests for disbursements of funds from his personal account were wrongfully denied; his cell was searched multiple times; he was intimidated; and mail to his

attorney was tampered with or sabotaged in retaliation for filing grievances and submitting Freedom of Information Act ("FOIL") requests. (Dkt. No. 18.) Named as Defendants in Plaintiff's Second Amended Complaint were Defendants Lawrence Sears, retired Superintendent at Ogdensburg; Marian Charlebois, Deputy Superintendent for Programs at Ogdensburg; Patricia Burnell, Deputy Superintendent for Administration at Ogdensburg; Lawrence Kanaly, retired Captain and Deputy Superintendent of Security at Ogdensburg; David Doty, Correction Sergeant at Ogdensburg; James LaFave, incorrectly sued as "Mr. Lafaye," Correction Sergeant at Ogdensburg; Scott Patak, Correction Sergeant at Ogdensburg; Helga Ross, Inmate Records Coordinator and FOIL Officer at Ogdensburg; Susan McLear, Facility Steward at Ogdensburg; Gerry Molnar, Inmate Grievance Supervisor at Ogdensburg; Joseph Balcom, Correction Officer at Ogdensburg; Richard Frary, Correction Officer at Ogdensburg; Robert Currier, Correction Officer at Ogdensburg; and Philip Jessmer, incorrectly sued as "Phil Jessman," Mail Room Clerk at Ogdensburg.[1] (Dkt. No. 18 at p. 1.)

Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. Nos. 45 and 48.) In his March 14, 2003, Decision and Order, the Honorable David N. Hurd, United States District Judge, accepted my February 19, 2003, Report and Recommendation (Dkt. No. 55) and granted Defendants summary judgment dismissing all of Plaintiff's claims with the exception of his claim against Defendants Scott Patak ("Patak") and Lawrence Kanaly ("Kanaly") for retaliation in connection with the denial of Plaintiff's request to

---

[1] Plaintiff's Second Amended Complaint was dismissed as against named Defendant Security Staff of Ogdensburg Correctional Facility by the December 7, 2010, Decision and Order of District Court Judge David N. Hurd. (Dkt. No. 17 at p. 5.)

2

disburse $3,800 to his attorney, Melvin Simensky ("Simensky"). (Dkt. No. 59).[2]  On February 21, 2013, shortly after the filing of my Report-Recommendation, counsel for Defendants Patak and Kanaly filed a letter request seeking leave to file a second motion for summary judgment with regard to the remaining claim against them. By Text Order dated February 28, 2013, I granted the letter request.[3]

## II.     BACKGROUND[4]

### A.     Plaintiff's Disbursement Requests

On August 20, 2010, Plaintiff submitted a request to disburse $3,800 to John Ng ("Ng"). (Dkt. No. 60-5 at ¶ 17 and p. 16.) The money was part of $10,710.46 in life insurance proceeds sent to Plaintiff by Simensky. (Dkt. No. 18 at p. 9.) Because the amount of the requested disbursement exceeded the $100 threshold set forth in Directive 2798, § III(A)(1)(c), *id*. at p.12, the request was forwarded to the Ogdensburg security office where Kanaly, as Security Captain,

---

[2] Judge Hurd's unpublished Decision and Order may be found at 2013 WL 1081535 and 2013 U.S. Dist. LEXIS 35269.

[3] I had recommended denial of summary judgment on Plaintiff's retaliation claim against Patak and Kanaly, arising out of the denial of Plaintiff's request to disburse $3,800 to Simensky, because the claim had not been addressed by Defendants on the motion. (Dkt. No. 55 at pp. 24-25.) In his letter requesting leave to serve a second summary judgment motion, counsel for Patak and Kanaly explained that Plaintiff had not specifically alleged First Amendment retaliation against Patak and Kanaly with regard to the denial of his request to disburse funds to Simensky in his Second Amended Complaint, and Defendants had, therefore, failed to identify it as a distinct claim in the lawsuit in moving for summary judgment. (Dkt. No. 56.) After consulting with Judge Hurd and finding good cause shown for Defendants' request, I granted the motion.

[4] Familiarity with the complete facts of this case, which are set forth in my February 19, 2013, Report and Recommendation (Dkt. No. 55), is presumed. According, only facts pertinent to the motion before me are addressed.

3

would have assigned it to one or more Corrections Sergeants at Ogdensburg for investigation.[5] *Id*. at ¶ 17. The investigation raised concerns about the relationship between Plaintiff and Ng, a non-family member, and ambiguities concerning the purpose for the disbursement. *Id*. at ¶ 18. Those concerns, along with the relatively large amount involved, led Kanaly, as the Ogdensburg Superintendent's designee, to deny the request on August 28, 2009. *Id*.

Shortly after the denial, on September 2 and 7, 2009, Plaintiff submitted two requests to disburse $95 to Ng. (Dkt. No. 52-2 at pp. 33-35, 51-52.) The first was processed and the disbursement issued the following day. *Id.* at p. 33. The second was denied because Plaintiff's multiple requests for smaller disbursements to Ng following the denial of his $3,800 request raised red flags from a security perspective, given the findings in the investigation of Plaintiff's initial request. (Dkt. No. 48-9 at pp. 7-8, ¶¶ 23, 27.) Kanaly believed the smaller disbursement requests were made to subvert the Department of Corrections and Community Supervision ("DOCCS") policy regarding disbursements. (Dkt. No. 60-5 at ¶ 25.)

According to Plaintiff, David Doty, against whom the action was dismissed on Defendants' original summary judgment motion, recommended that Plaintiff return the life insurance proceeds to his attorney. (Dkt. No. 52-2 at p. 34.) On or about September 11, 2009, Plaintiff submitted a request to disburse $3,800 of the $10,710.46 proceeds to Simensky. (Dkt. No. 60-5 at ¶ 24 and p. 23.) Because the request exceeded $100, an investigation followed. *Id*. at ¶ 24. Patak interviewed Plaintiff with respect to the disbursement request. (Dkt. No. 52-2 at p. 36.) According to Plaintiff, after Patak made a few calls and learned that Plaintiff had filed a

---

[5] Directive 2798 is a directive of the New York State Department of Corrections and Community Supervision.

4

grievance, he told Plaintiff he was going to deny the disbursement request because he had no way of confirming that Simensky was an attorney. *Id*.

The evidence shows that it was Kanaly, not Patak, who made the decision to deny Plaintiff's disbursement request. (Dkt. No. 60-5 at ¶ 26.) According to Kanaly, he found the Simensky disbursement request to be suspicious when viewed in the context of findings in the investigation of the Ng disbursement requests. *Id*. at ¶¶ 25. Kanaly denied the Simensky disbursement request based upon those findings and the security concerns they raised. *Id*. at ¶ 26.

### B. Exhaustion of Administrative Remedies

#### 1. Denial of the Request for a $3,800 Disbursement to Ng

On August 28, 2009, Plaintiff filed a grievance challenging the denial of his request to disburse $3,800 to Ng. (Dkt. Nos. 52-2 at p. 32-33; 48-9 at p. 19.) The grievance was denied by majority vote of the Inmate Grievance Review Committee ("IGRC") at Ogdensburg. *Id*. at pp. 32-33. Ogdensburg Superintendent Lawrence Sears denied Plaintiff's grievance on appeal. *Id*. at p. 34. The Central Office Review Committee ("CORC") denied Plaintiff's appeal on October 21, 2009. *Id*. at p. 36.

#### 2. Denial of the Request for a $3,800 Disbursement to Simensky

Gerald Molnar ("Molnar"), Inmate Grievance Supervisor at Ogdensburg for the past fourteen years, has oversight of the grievance program at the facility. (Dkt. No. 60-4 at ¶ 1.) On April 15, 2013, he conducted a review of Ogdensburg's grievance system to locate all grievances filed by Plaintiff while he was confined at Ogdensburg. *Id*. at ¶ 3. A printout of the results of Molnar's search reveals that Plaintiff filed only two grievances between August 2009, and June

5

2010. *Id*. at ¶ 4 and pp. 4-14. The first was the August 28, 2009, grievance concerning denial of a request for disbursement of funds to Ng. *Id*. The second was filed on November 16, 2009 and concerned the reason for cube searches. *Id*. The records did not contain any grievance filed by Plaintiff concerning the denial of his September 11, 2009, request to disburse $3,800 in funds to Simensky. *Id.*

Jeffrey Hale ("Hale"), Assistant Director of the Inmate Grievance program for DOCCS, is the custodian for records maintained by CORC. (Dkt. No. 60-6 at ¶¶ 1-2.) On April 15, 2013, Hale conducted a search of CORC records of appeals received by CORC from Plaintiff. *Id*. at ¶ 6. A printout of the results of the search show that the only appeal filed by Plaintiff on grievances involving denials of fund disbursement requests was his appeal from the denial of his August 28, 2009, grievance concerning the request for disbursement of $3,800 to Ng. *Id*. at ¶ 7 and p. 3.

In his opposition to Patak and Kanaly's second motion for summary judgment, Plaintiff contends that he filed a grievance with regard to the denial of his request to disburse $3,800 to Simensky on October 6, 2009, but that it was time barred and therefore never given a number. (Dkt. No. 67-2 at ¶ 3.) Plaintiff submitted a written grievance from the denial of the Simensky disbursement request, entitled "Re: Inmate Funds" in opposition to Patak and Kanaly's motion. (Dkt. No. 67-3 at 1-4.) The grievance was dated October 6, 2009, one day after Plaintiff received a copy of his Simensky disbursement request form with a notation that it had been denied. *Id.* at pp. 2, 8. Plaintiff also submitted a memorandum from Molnar, dated December 2, 2009, stating that he had received Plaintiff's complaint dated December 1, 2009, regarding "Inmate Funds." (Dkt. No. 67-3 at 5.) The memorandum contained no mention of an October 6, 2009, grievance.

6

It explained that the December 1, 2009 complaint related to incidents that Plaintiff had stated occurred on 9/4/09, 9/12/09, 9/21/09, and 10/5/09, making it untimely under the DOCCS grievance procedure, which requires that grievance complaints be submitted to the clerk "within twenty-one calendar days of the alleged occurrence." *Id*. Molnar rejected Plaintiff's grievance complaint as untimely. *Id*. Plaintiff has made no attempt to explain the discrepancy between the October 6, 2009, grievance complaint submitted by him and the memorandum from Molnar indicating that the complaint Plaintiff attempted to file was dated December 1, 2009.

## III. APPLICABLE LEGAL STANDARDS

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue

of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999)[6] (Pauley, D.J.) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## IV. ANALYSIS

### A. Plaintiff's Failure to Exhaust his Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The PLRA requires "proper exhaustion" of prison administrative remedies which includes compliance with agency deadlines and procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[P]roper exhaustion . . . means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." *Id*. Exhaustion is mandatory, and an inmate cannot satisfy the PLRA's exhaustion

---

[6] Copies of unreported cases cited herein will be mailed to Plaintiff as a *pro se* litigant. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

8

requirement by filing an untimely or administratively defective grievance or appeal. *Id*. at 84-85.

DOCCS Inmate Grievance Procedure ("IGP") has three stages which prison inmates must complete. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5; *see also Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009). First a grievance complaint is submitted to the Inmate Grievance Resolution Committee ("IGRC") for an initial determination. The grievance must be submitted within twenty-one calendar days of the alleged occurrence. *Id*. at § 701.5(a). Next, if the IGRC decision is adverse to the inmate, he has seven calendar days to appeal to the prison superintendent. *Id*. at § 701.5(c). If dissatisfied with the superintendent's decision, an inmate has another seven calendar days to appeal the superintendent's decision to CORC. *Id.* at § 701.5(d).

Defendants Patak and Kanaly contend that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies on his claim that his request to disburse $3,800 to Simensky was denied in retaliation for filing a grievance with regard to the denial of his earlier request to disburse the same amount to Ng.[7] Because failure to exhaust is an affirmative defense, defendants bear the burden of showing that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *4, 2010 U.S. Dist. LEXIS 32014, at *16 (N.D.N.Y. Mar. 31, 2010).

There is no record of Plaintiff filing the October 6, 2009, grievance he submitted in opposition to Defendants' motion, and even if Plaintiff did attempt unsuccessfully to file it in a timely manner, there is no evidence that he went through the steps of appealing the grievance or

---

[7] Defendants have asserted failure to exhaust as an affirmative defense in their Answer. (Dkt. No. 26 at ¶ 35.)

the refusal to accept it to the superintendent and CORC as required under the DOCCS grievance procedure. There is likewise no record of Plaintiff filing an appeal to the Ogdensburg superintendent or CORC from the December 2, 2009, rejection of his December 1, 2009, grievance as untimely, also required under the DOCCS grievance procedure. *See Belile v. Griffin*, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *3-4, 7, 2013 U.S. Dist. LEXIS 47137, at *10, 22-23 (N.D.N.Y. Feb. 12, 2013) (plaintiff failed to exhaust his administrative remedies because he had not followed through on all of the steps, *i.e.*, he did not appeal to the superintendent of the facility or appeal any unfavorable decision of the superintendent to CORC; plaintiff alleged he had filed two grievances by placing the grievances in his meal slot to be filed by corrections officers, but claimed they were intercepted or discarded, and never received a determination on the grievances); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), *aff'd*, 178 F. App'x 39 (2d Cir. 2006); *Atkins v. Menard*, No. 9:11-CV-0366 (GTS/DEP), 2012 WL 4026840, at *4, 2012 U.S. Dist. LEXIS 130059, at *13 (N.D.N.Y. Sept. 12, 2012) (finding that plaintiff failed to exhaust where he had the "ability, and indeed the duty, to appeal the IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete the grievance process."); *Murray v. Palmer*, No. 03-CV-1010, (DNH/GLS), 2008 WL 2522324, at *16, 18 (N.D.N.Y. June 20, 2008) (finding that in order to exhaust available administrative remedies with regard to his grievance, plaintiff had to file an appeal with the superintendent from the IGRC's nonresponse, which included a failure to acknowledge the

receipt of a grievance and assign it a number); *Midalgo v. Bass*, No. 03-CV-1128 (NAM/RFT), 2006 WL 2795332, at *7, 2006 U.S. Dist. LEXIS 98871, at *16-17 (N.D.N.Y. Sept. 26, 2006) (observing that plaintiff was required to seek an appeal to the superintendent, even though he never received a response to his grievance and was not assigned a grievance number); *Gill v. Frawley*, No. 02-CV-1380, 2006 WL 1742738, at *11 & n.7 (N.D.N.Y. June 22, 2006) (Lowe, M.J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance."); *Waters v. Schneider*, No. 01 Civ 5217 (SHS), 2002 WL 727025, at *2, 2002 U.S. Dist. LEXIS 7166, at *4-5 (S.D.N.Y. Apr. 23, 2002) (finding that in order to exhaust administrative remedies, plaintiff had to file an appeal with the superintendent from IGRC's non-response to his grievance, of which no record existed). Therefore, I find that Plaintiff failed to exhaust his administrative remedies as required under the PLRA.

My inquiry does not, however, end with a determination that DOCCS provided an administrative grievance procedure and Plaintiff failed to exhaust his administrative remedies under that procedure. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)]." *Murray*, 2010 WL 1235591, at *4.

*Hemphill* sets forth a three-part inquiry for district courts to determine whether a plaintiff's claim should be barred for failure to exhaust. First, courts must determine if

11

administrative remedies were in fact available to a plaintiff. In *Hemphill*, the Second Circuit acknowledged the existence of the DOCCS grievance procedure and stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness have deemed them available.'" *Hemphill*, 380 F.3d at 688. Courts have found administrative grievance procedures unavailable where an inmate was prevented from filing a grievance. *See, e.g., Sandlin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008) (The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals . . . effectively rendered the grievance appeal process unavailable to him."). The evidence in this case shows that Plaintiff was able to pursue his grievance from the denial of his request to disburse $3,800 to Ng through all three steps of the grievance procedure. Moreover, Plaintiff has submitted no evidence indicating he was prevented from filing a timely grievance from the denial of his request to disburse funds to Simensky and completing all of the steps of the exhaustion process.

Second, courts must determine if the defendants are estopped from presenting non-exhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting his administrative remedies by "'beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility.'" *Hemphill*, 380 F.3d at 688 (quoting *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)). Plaintiff does not claim, and has submitted no evidence, showing that Defendants Patak and Kanaly, or anyone else, prevented him from exhausting his administrative remedies with regard to the Simensky

disbursement denial for any reason other than untimeliness.[8]

Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the defendants may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified.[9] *Hemphill*, 380 F.3d at 686. "Special circumstances" have been found to include an incorrect but reasonable interpretation of DOCCS regulations, or failing to file a grievance in the precise manner prescribed by DOCCS as a result of threats. *See, e.g., Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was reasonable and prison official threatened inmate).

Plaintiff followed the DOCCS grievance procedure in pursuing his grievance concerning denial of his Ng disbursement request through to exhaustion, demonstrating that he was aware of

---

[8] Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals. *Murray*, 2010 WL 1235591, at *5 & n.26 (collecting cases); *McCloud v. Tureglio*, No. 07-CV-0650, 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) (Lowe, M.J.) ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").

[9] Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81 (2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84. The Supreme Court resolved the question in the negative, explaining that PLRA requires "proper exhaustion" – "using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id*. at 90 (citation omitted). Although the Second Circuit has acknowledged that there is some question as to whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases. *See, e.g., Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense).

the procedure and understood how to maneuver his way through it. Furthermore, there is no evidence in the summary judgment record that Plaintiff was prevented from exhausting his administrative remedies by any other special circumstances.

Given Plaintiff's failure to exhaust, and the inapplicability of any of the three *Hemphill* exceptions, I find that Plaintiff's retaliation claim against Defendants Patak and Kanaly is barred as a result of his failure to exhaust his administrative remedies.

### B. Plaintiff's Retaliation Claim

Even if Plaintiff had exhausted his administrative remedies, Patak and Kanaly would be entitled to summary judgment dismissing his retaliation claim against them. Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Pidlypchak*, 389 F.3d at 381-83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkiewicz,* 534 U.S. 506.

To defeat summary judgment on a First Amendment retaliation claim, a plaintiff must provide evidence that (1) the speech or conduct at issue was protected, (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Pidlypchak*, 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492); *Williams v. Temple*, 349 F. App'x 594, 596 (2d Cir. 2009), *cert. denied*, ___ U.S. ___, 131 S.Ct. 241 (2010) (citing *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)).

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

On their initial summary judgment motion, Defendants conceded that Plaintiff's filing of grievances constituted protected First Amendment conduct. (Dkt. No. 48-3 at pp. 13-14.) *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) (the right to file grievances is a

15

constitutionally protected activity for retaliation purposes). Even assuming solely for purposes of this motion that denial of the disbursement request constituted an adverse action for purposes of Plaintiff's retaliation claim, the claim still fails because the evidence does not support a causal connection between Plaintiff's Ng grievance and the denial of his Simensky disbursement request.

Plaintiff claims that by failing to submit an affidavit in support of Defendants' motion, Patak has conceded that he denied the Simensky disbursement request because Plaintiff had exercised his constitutional right to grieve. (Dkt. No. 67-4 at ¶¶ 6-7.) The evidence, however, establishes that it was Kanaly, not Patak, who made the decision to deny the request, and that his decision was based not upon Patak's investigation of the Simensky request, but upon information that had been obtained in the investigation of Plaintiff's request to disburse $3,800 to Ng. (*See generally* Dkt. No. 60-5.) Before § 1983 damages may be awarded against a defendant, a plaintiff must show that the defendant was personally involved – that he was a direct participant in the alleged constitutional violations. *Colon,* 58 F.3d at 873; *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). There is no evidence that Patak made or even participated in the decision to deny the Simensky disbursement request.

Plaintiff's claim against Kanaly, as articulated in his opposition papers, is that Kanaly, acting in a supervisory capacity, allowed Patak's retaliatory conduct to occur. (Dkt. No. 67-4 at ¶ 9.) "*[R]espondeat superior* liability does not lie against corrections officers in Section 1983 actions" (*Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)), and "[h]olding a position in a hierarchical chain of command, without more is insufficient to support a showing of personal

involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate . . . a prison superintendent in a § 1983 claim" ) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass*, 790 F.2d at 263. The evidence does not support a claim that Kanaly, as supervisor, allowed Patak to engage in retaliatory conduct in any event, since Kanaly has acknowledged that it was he who denied the disbursement request. Plaintiff has made no claim, nor has he submitted evidence to support a claim, that Kanaly denied the Simensky disbursement request in retaliation for Plaintiff's filing a grievance with regard to denial of the Ng $3,800 request. Furthermore, Kanaly has specifically denied he had any retaliatory motive for denying the Simensky disbursement request. (Dkt. No. 60-5 at ¶ 27.)

Defendants would be entitled to summary judgment dismissing the retaliation claim even if Plaintiff had sustained his burden of establishing protected conduct, adverse action, and causal connection, because Defendants have offered uncontroverted evidence that Kanaly would have denied Plaintiff's $3,800 disbursement request in the absence of protected First Amendment conduct on Plaintiff's part. *See Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir. 2002); *see also Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994) (". . . the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad

administrative and discretionary authority over the institutions they manage.") (citations and internal quotation marks omitted).

Inmate disbursements have been identified as a significant area of concern in prisons. (Dkt. No. 60-5 at ¶¶ 7, 13-16.) Investigation of disbursement requests, as required under Directive 2798, has been described as a critical tool in keeping contraband, drugs, extortion schemes, and other security risks out of prisons. *Id*. The evidence establishes that Kanaly's security concerns would have led him to deny the Simensky disbursement request in the absence of any improper motive on his part. (Dkt. No. 60-5 at ¶ 21.)

## V. CONCLUSION

In light of the foregoing, the Court recommends that Defendants Patak and Kanaly's second motion for summary judgment, made pursuant to Rule 56 of the Federal Rules of Civil Procedure, be granted, and that Plaintiff's Second Amended Complaint be dismissed.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants Patak and Kanaly's second motion for summary judgment (Dkt. No. 67) be **GRANTED**, and that Plaintiff's Second Amended Complaint be dismissed; and it is hereby,

**ORDERED**, that the Clerk provide Plaintiff with copies of all unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: October 15, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge